**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GIW INDUSTRIES, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 10 C 5031** |
| v. ) | |
| ) | **Judge Joan H. Lefkow** |
| **S.P.I./MOBILE PULLEY WORKS, INC., d/b/a** ) | |
| **STEEL PROCESSORS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

GIW Industries, Inc. ("GIW") filed a suit for patent infringement against S.P.I/Mobile Pulley Works, Inc. ("SPI"), claiming that SPI is infringing on U.S. Patent No. 7,465,153 ("the '153 Patent"). Before the court is SPI's motion to transfer the case to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion [#17] is granted.

**BACKGROUND**

GIW is a Georgia corporation headquartered in Grovetown, Georgia that, among other things, manufactures slurry pumps. It is the owner of the '153 Patent, which is entitled "Diverter for Reducing Wear in a Slurry Pump" and issued on December 16, 2008. One of GIW's competitors is SPI, an Alabama corporation that provides equipment and services to the dredging industry. GIW accuses SPI of infringing the '153 Patent by making, using, offering to sell, and selling slurry pump diverters that include a suction side excluder ("SSE impellers").

SPI is headquartered in Mobile, Alabama. All of its employees, corporate records, and sales and technical information are located at its headquarters. Similarly, all of its slurry pumps,

including the SSE impellers, are designed and manufactured in Mobile. SPI does not have any employees or representatives in Illinois, but it has sold a limited number of its SSE impellers to Great Lakes Dredge & Dock ("Great Lakes"), located in Oak Brook, Illinois. SPI represents that its sale of SSE impellers to Great Lakes accounts for less than 5% of its overall sales to Great Lakes.

Great Lakes is the largest provider of dredging services in the United States, with approximately 2,000 employees worldwide. In 2005, GIW's sales representative, Hagler Systems, Inc.,[1] informed Great Lakes that one of its competitors, Weeks Marine, Inc., had successfully tested GIW's diverter impeller, the commercial embodiment of the '153 Patent, on one of its dredges. Hagler Systems, Inc. urged Great Lakes to do the same. A test of GIW's diverter impeller was then performed on Great Lakes's dredge, Liberty Island, under the supervision of Steven Vance, a Great Lakes production engineer. Great Lakes subsequently bought between four and eight SSE impellers from SPI, although none of them have left SPI's Alabama facilities. At least two of these impellers were purchased after the '153 Patent issued.

In 2003, SPI sought a declaratory judgment in the Southern District of Alabama that it did not infringe certain patents held by GIW. The case did not involve the '153 Patent and was dismissed soon after filing.

## ANALYSIS

SPI's motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a

---

[1] Hagler Systems, Inc. is based in South Carolina.

practical matter, "[t]he moving party must show that (1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007) (citing *Bryant* v. *ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219; *see also Van Dusen* v. *Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (noting that the remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"). Each factor should be given the appropriate weight under the circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 857.

      The parties agree that venue is proper in both this district and the Southern District of Alabama. Instead, the parties dispute whether transfer is warranted for the convenience of the parties and witnesses and whether transfer serves the interests of justice.

**I.     Convenience of the Parties and Witnesses**

      Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the

convenience of the parties in litigating in the respective forums. *See, e.g.*, *Brandon Apparel Group, Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (citations omitted).

  **A.**  **Plaintiff's Choice of Forum and the Situs of Material Events**

Under § 1404(a), a plaintiff's choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Id.*; *see also United Airlines, Inc.* v. *Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) (unless the balance weighs strongly in favor of transfer, plaintiff's choice should not be disturbed). But "plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action . . . . In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience." *Hotel Constructors, Inc.* v. *Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982) (citations omitted).

  The Northern District of Illinois is not GIW's or SPI's home forum. SPI contends that the situs of material events is Mobile, Alabama. Specifically, SPI's products are designed and manufactured in Alabama. Aside from this district's local patent rules, there is no apparent reason for GIW strenuously arguing to maintain this action in the Northern District of Illinois. GIW, however, argues that there is a connection between the forum and underlying claim because a part of the challenged conduct, namely SPI's sale of SSE impellers to Great Lakes, occurred in this district. It is unclear what percentage of SPI's sales of SSE impellers has been to Illinois companies, but it appears to be low, as Great Lakes claims to have only purchased between four and eight SSE impellers. GIW also claims that the fact that Great Lakes tested GIW's diverter impeller in 2005 and 2006 establishes contact with this district that is relevant to issues of nonobviousness that might arise. This testing, however, did not occur in Illinois.

Despite GIW's efforts to assert a connection to this district so as to warrant deference to its chosen forum, such a connection is attenuated at best. Instead, SPI has demonstrated that the situs of material events is in the Southern District of Alabama. Sales to customers in this district alone do not establish a connection entitling GIW's choice of forum to great deference.[2] *See, e.g.*, *Illinois Computer Research, LLC* v. *HarperCollins Publishers, Inc.*, No. 10 C 5021, 2010 WL 4877501, at *2 (N.D. Ill. Nov. 22, 2010) (where infringing acts took place in numerous districts around the country, plaintiff's choice of forum not entitled to much weight) (citing *Rabbit Tanaka Corp. USA* v. *Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009)); *Anchor Wall Sys., Inc.* v. *R&D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999) ("Sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states."). Great Lakes may have some knowledge that could be relevant to the nonobviousness of the '153 Patent because it tested GIW's diverter impeller prior to the patent's being issued, but this link is similarly weak. The Southern District of Alabama, on the other hand, has a strong connection to the conduct underlying the case. It is where SPI develops, manufactures, and sells the accused product and is where the evidence that would give rise to SPI's liability is centralized. *See, e.g.*, *Cooper Bauck Corp.* v. *Dolby Labs., Inc.*, No. 05 C 7063, 2006 WL 1735282, at *5 (N.D. Ill. June 19, 2006) ("[I]n patent infringement cases, the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." (citation omitted) (internal quotation marks

---

[2] While neither side has provided evidence that the SSE impellers are also sold in other states, nothing has been presented to support that Great Lakes is the only buyer. The court thus presumes that the SSE impellers are sold across the country.

omitted)). The SSE impellers bought by Great Lakes also remain in Alabama. Because the connection to this district is rather tenuous, GIW's choice of forum will not be accorded substantial deference but will instead be considered as one factor weighing against transfer. The fact that the situs of material events is in the Southern District of Alabama weighs in favor of transfer.

        **B.**        **Ease of Access to Sources of Proof**

SPI argues that transfer is justified in part because its documents are located in Alabama. This assertion will not be given great weight because documents are presumed to be easily transportable. *See Unomedical A/S* v. *Smiths Med. MD, Inc.*, No. 09-cv-4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010) (rejecting similar argument because, "[i]n patent cases, no matter where the trial is held, all relevant documents – regarding both the patented invention and the allegedly infringing technology – will have to be collected, copied, and sent to the offices of trial counsel" (citations omitted) (internal quotation marks omitted)); *Rabbit Tanaka Corp. USA*, 598 F. Supp. 2d at 840 ("In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town."). Presumably, Great Lakes may have some documents in this district that could be relevant to GIW's claim of nonobviousness, but the bulk of GIW's own documents are likely located outside this district. Taking these facts into consideration, this factor weighs slightly in favor of transfer.

        **C.**        **Convenience of the Witnesses**

"The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel,* 42 F. Supp. 2d at 834 (quoting *Rose* v. *Franchetti*,

713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). In evaluating this factor, the court considers the number of witnesses located in each forum and the nature, quality, and importance of their testimony. *See Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) ("[T]he Court considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. [The movant] bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case." (citations omitted) (internal quotation marks omitted)). The determination of venue should not depend on which party submits a longer witness list. *Brandon Apparel*, 42 F. Supp. 2d at 834.

SPI identified three employee witnesses, all residing in Minnesota, in its initial disclosures. These witnesses are presumed to be under SPI's control and transfer is not required solely for their convenience. *See, e.g.*, *Bullard* v. *Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). It also claims that the inventors of the '153 patent live in Georgia and Denmark and that the attorneys who prosecuted the '153 patent are also located in Georgia. SPI, however, has not identified the substance or importance of their testimony. GIW identified nine employee or related-company employee witnesses located in Georgia, South Carolina, and Germany, in addition to five potential Great Lakes witnesses, presumably all located in Illinois, although one of whose location is currently unknown. GIW claims that the Great Lakes witnesses are important to establishing the sale of the SSE impellers and the nonobviousness of the '153 Patent. Based on

7

the location of GIW's identified non-party witnesses in this district and its proper explanation of the potential importance of their testimony, this factor weighs slightly against transfer.

### D. Convenience of the Parties

In evaluating the convenience of the parties, the court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d at 834. Neither party is a resident of this district. While SPI claims that litigating in the Southern District of Alabama would be more convenient to both parties, as the distance between GIW's headquarters in Georgia and the Southern District of Alabama is less than that between Georgia and this district, neither party has asserted that the financial burden of litigating in its non-preferred forum would affect its ability to litigate this case. Clearly, it would be more convenient for SPI to litigate the claims in the Southern District of Alabama because its witnesses, documents, and products are there. While a case should not be transferred where it "merely transforms an inconvenience for one party into an inconvenience for the other party," *Sage Prods., Inc.* v. *Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993), neither forum is particularly convenient for GIW. Thus, this factor weighs in favor of transfer.

## II. Interests of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc.* v. *Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). It "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.* Factors considered in this analysis involve the likelihood of a speedy trial, the

familiarity of judges in each forum with applicable law, the desirability of resolving controversies in their locale, and the relationship of each community to the controversy. *Id.*

As this is a patent case in which the applicable law is the same across the country, both district courts are presumed to be equally familiar with the law. *Rabbit Tanaka Corp. USA*, 598 F. Supp. 2d at 841. This factor is thus neutral with respect to transfer. The parties agree that the speed of the proceedings is also a neutral factor. While the median disposition time is slightly less in this district than in the Southern District of Alabama, the median time from filing to trial is longer in this district than in the Southern District of Alabama. GIW has submitted statistics showing that only 2.4% of patent cases filed in this district between January 1991 and October 2010 proceeded to trial, suggesting that the difference in time to trial between the two districts should not weigh strongly in favor of transfer. The court agrees that the statistics are relatively meaningless, making this factor neutral. *See id.*

As discussed above, this district's connection to the controversy is rather weak. While SPI has sold the allegedly infringing product to a company based in this district, this does not elevate this district's interest in resolving the controversy over that of the Southern District of Alabama, where SPI is headquartered and has many employees. Accordingly, the impact of this litigation will be felt more strongly in the Southern District of Alabama, with only some resultant fallout possible in this district that would affect Great Lakes's use of particular impellers. The desirability of resolving the dispute in a location with greater ties to the litigation than this district weighs heavily in favor of transfer.

Taking the foregoing factors into account, the interests of justice favor transferring this action to the Southern District of Alabama. Litigation in the Southern District of Alabama is

"clearly more convenient." The situs of material events is in Alabama. The majority of documents and other forms of evidence are located in that district. The only connection to Illinois is the sale of several SSE impellers to a company headquartered in Illinois but doing business around the world and that several potential witnesses are located here. Transfer to the Southern District of Alabama is warranted.

## CONCLUSION AND ORDER

For the foregoing reasons, SPI's motion to transfer [#17] is granted. The Clerk is directed to transfer the case to the Southern District of Alabama.

Dated: March 25, 2011        Enter: _____

                                                  JOAN HUMPHREY LEFKOW
                                                  United States District Judge